IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ERIC FLINT,

        Petitioner,

    v.

WARDEN A. COOPER,

        Respondent.

Case No. 3:25-cv-02229-HZ

OPINION AND ORDER

Eric Flint
5996 Caymans Pl. N.E.
Bremerton, WA 98311

      Petitioner, *Pro Se*

Scott E. Bradford
United States Attorney
Susanne Luse, Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902

      Attorneys for Respondent

1 - OPINION AND ORDER

HERNANDEZ, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2241 challenging a decision by the Bureau of Prisons ("BOP") to disallow 48 days of earned time credit under the First Step Act ("FSA") for time he spent in transit between FCI-Elkton and FCI-Sheridan. For the reasons that follow, the Petition for Writ of Habeas Corpus (#1) is granted.

## BACKGROUND

In 2024, Petitioner was convicted in the Western District of Washington of Conspiracy to Distribute Controlled Substances and Conspiracy to Commit Money Laundering. On September 27, 2024, the District Court sentenced him to 60 months in prison to be followed by four years of supervised release. Petitioner is currently serving out the last of his sentence in home confinement, and the BOP recently calculated his current projected release date as August 22, 2026. Declaration of George Cho (#13), ¶ 4.

Petitioner's first designated BOP facility for service of his sentence was FCI-Elkton in Ohio where he remained until September 3, 2025. On that date, the BOP transported him to the Federal Transfer Center in Oklahoma City, Oklahoma, where he remained in BOP custody until he was transferred to FPC-Sheridan on October 22, 2025. During those 48 days at FTC-Oklahoma City, the BOP placed Petitioner in "disallow" status with respect to his ability to earn time credits under the FSA such that he lost approximately 24 days of time credits. *Id.*, Exhibit B, p. 1. It did so despite Petitioner's continued participation in qualifying programming that would have otherwise resulted in additional earned FSA time credits. *See* Petition (#1), p. 4 (containing an allegation, uncontroverted by Respondent, that Petitioner was participating in qualifying programming for each of the 48 days he was in transit status).

2 - OPINION AND ORDER

Petitioner claims that the BOP improperly disallowed him the FSA time credits he earned during the 48 days he spent in transit status at FTC-Oklahoma City. Respondent asks the Court to deny habeas corpus relief because: (1) Petitioner has not exhausted his administrative remedies; (2) even if the Court waives the exhaustion requirement, the FSA does not permit a prisoner to earn FSA time credits while he is in transit between designated facilities.

**DISCUSSION**

## I.     Exhaustion of Administrative Remedies

"In order to seek habeas relief under section 2241 . . . a petitioner must first, 'as a prudential matter,' exhaust his or her available administrative remedies." *Singh v. Napolitano,* 649 F.3d 899, 900 (9th Cir. 2010) (per curiam). Requiring a petitioner to exhaust his administrative remedies aids "judicial review by allowing the appropriate development of a factual record in an expert forum." *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983). Use of available administrative remedies conserves "the court's time because of the possibility that the relief applied for may be granted at the administrative level." *Id*. Moreover, it allows "the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings." *Id*; *United Farm Workers v. Arizona Agric. Employ. Relations Bd.*, 669 F.2d 1249, 1253 (9th Cir. 1982).

"Exhaustion of administrative remedies is not required where the remedies are inadequate, inefficacious, or futile, where pursuit of them would irreparably injure the plaintiff, or where the administrative proceedings themselves are void." *United Farm Workers*, 669 F.2d at 1253 (citation omitted); *see also Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993) (exhaustion waived where request for administrative remedy initially denied by Community Corrections Office based upon official BOP policy and further appeal would almost certainly have

3 - OPINION AND ORDER

been denied based upon the same policy). Courts should not, however, relax the exhaustion requirement where it "would encourage the deliberate bypass of the administrative scheme." *Laing v. Ashcroft,* 370 F.3d 994, 1000 (9th Cir. 2004).

In this case, Petitioner acknowledges that he has not attempted to exhaust his administrative remedies, but asks the Court to waive the exhaustion requirement because requiring his adherence to the four-tiered administrative remedy process employed by the BOP would essentially moot his case due to his impending release this summer. Because FSA time credits can be applied to reduce a term of supervised release, *Gonzalez v. Herrera*, 151 F.4th 1076, 1089 (9th Cir. 2025), and as Petitioner has a four-year term of supervised release to serve once his custodial sentence has ended, his impending release from home confinement does not moot his case. His first argument is therefore unavailing.[1]

Petitioner also asks the Court to waive the administrative exhaustion requirement because the BOP's decision not to credit him with earned FSA time credits during the time he was in transit status is required by its own regulation, thus exhaustion is futile. Respondent has not argued to the contrary, and takes the position that no prisoner in transit status can earn FSA time credits. On this record, exhaustion of administrative remedies would be futile, and the Court waives the exhaustion requirement.

---

[1] Even if Petitioner did not have any term of supervised release, neither the relative brevity of Petitioner's remaining sentence nor his desire for a faster path to federal court justifies excusing the exhaustion requirement. To conclude otherwise would assume that the administrative process is, by its very nature, simply a *pro forma* matter. As the Supreme Court has observed, in addition to producing a useful record for subsequent judicial consideration, the administrative review process "promotes efficiency" and "[c]laims can generally be resolved much more quickly and economically in proceedings before an agency that in litigation in federal court." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).

4 - OPINION AND ORDER

## II.    The Merits

The FSA, which Congress enacted on December 21, 2018, incentivizes prisoners that the BOP deems to be either minimum or low risk to complete evidence-based recidivism reduction ("EBRR") programs or so-called "productive activities" ("PA's").[2] In exchange for their successful participation in those programs, prisoners can earn time credits to accelerate their release from prison or reduce the term of their supervised release. *Gonzalez*, 151 F.4th at 1089. The FSA provides that prisoners who participate in programming specifically targeted at reducing their risk of recidivism will earn between ten and fifteen days of time credits for every 30 days of programming, and those credits can be applied toward a reduction in their sentences up to a maximum of 365 days, or accelerate their release from prison into transitional housing. 18 U.S.C. § 3632(d)(4)(A), (B), (D); 18 U.S.C. § 3624(g).

The pertinent part of the FSA at issue in this case is 18 U.S.C. § 3632(d)(4). That statute provides, in relevant part, as follows:

(4) Time Credits.—

(A) In general.—A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:

(i) a prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

(ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of

---

[2] The Court will refer to both EBRRs and PAs collectively as "EBRR programs" or "EBRR programming" in this Opinion.

successful participation in evidence-based recidivism reduction programming or productive activities.

**(B) Availability.—A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed—**

**(i) prior to the date of enactment of this subchapter; or**

**(ii) during official detention prior to the date that the prisoner's sentence commences under section 3585(a).**

18 U.S.C. § 3632(d)(4) (bold added).

In the wake of Congress' passing the FSA, the BOP promulgated 28 C.F.R. § 523.42(a) to specifically address when a prisoner becomes eligible to begin earning time credits under the FSA. That regulation provides, in relevant part, as follows:

**(a) When an eligible inmate begins earning FSA Time Credits. An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served).**

(b) Dates of participation in EBRRs or PAs.

(1) An inmate cannot earn FSA Time Credits for programming or activities in which he or she participated before December 21, 2018, the date of enactment of the First Step Act of 2018.

(2) An eligible inmate, as defined in this subpart, may earn FSA Time Credits for programming and activities in which he or she participated from December 21, 2018, until January 14, 2020.

(3) An eligible inmate, as defined in this subpart, may earn FSA Time Credit if he or she is successfully participating in EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment on or after January 15, 2020.

C.F.R. 523.42 (bold added).

6 - OPINION AND ORDER

Petitioner asserts that despite having been in transit status during the 48 days in question, he continued to complete EBRR programming, thus he should be permitted to apply FSA earned time credits toward his sentence. According to Respondent, the BOP has properly interpreted § 3632(d)(4)(B) to mean that a prisoner in transit status is automatically excluded from earning FSA time credits because he is not actually in his designated facility during that time. Respondent therefore takes the position that when Petitioner was at the Federal Transfer Center in Oklahoma, he was not in either of the institutions that the BOP designated as places for the service of his sentence, *i.e.,* FCI-Elkton or FCI Sheridan, thus he was categorically ineligible to earn FSA time credits.

In reviewing the issue of whether the BOP properly interpreted 18 U.S.C. § 3632(d)(4)(B), the Court uses the newer framework established by the Supreme Court in *Loper Bright Enterprises v. Raimondo,* 603 U.S. 369 (2024). *Loper Bright* requires this Court to "independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Id.* at 395. In doing so,

> Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires. Careful attention to the judgment of the Executive Branch may help inform that inquiry. And when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it. But courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.

*Id.* at 412-413.

To determine what programs will be most beneficial to reduce a particular inmate's risk of recidivism, within 28 days of a prisoner's arrival at his designated facility the BOP conducts a risk

7 - OPINION AND ORDER

and needs assessment to target the EBRR programming most likely to help that individual. *See* BOP Program Statement 5410.01. According to Respondent, because the risk and needs assessment takes place once the inmate arrives at his designated facility, his ability to participate in EBRR programming cannot take place before he arrives at the designated facility, thus the BOP reasonably chose the arrival date at the designated facility as the point at which the inmate begins earning FSA time credits.

Respondent believes it is significant that no new risk and needs assessment was performed at FTC-Oklahoma City, but the BOP had already completed the risk and needs assessment at FCI-Elkton, thereby allowing Petitioner to be in qualifying/earning FSA status during the time he was housed there. Respondent fails to apprise the Court as to how or why the FCI-Elkton risk and needs assessment somehow became invalid, nor does he address how Petitioner began once again earning FSA time credits on the very day he arrived at FPC-Sheridan, apparently with no new risk and needs assessment conducted upon his entry at FPC-Sheridan. *See* Cho Declaration (#13), Exhibit B, p. 1. Put another way, Petitioner's risk and needs assessment was valid for both FCI-Elkton and FPC-Sheridan, and he continued to participate in the EBRR programming (that the BOP had identified as beneficial from the FCI-Elkton risk and needs assessment) while he was in transit status, thus there is no discernible reason why he would have needed a new risk and needs assessment at FTC-Oklahoma City.

Respondent asserts that Petitioner is asking the Court to rewrite the FSA to add an entitlement to begin earning time credits as soon as a prisoner's sentence commences even if he is not in his designated institution. He highlights the portion of § 3632(d)(4)(B)(ii) that provides that a prisoner may not earn FSA time credits "during official detention prior to the date that the

8 - OPINION AND ORDER

prisoner's sentence commences under [18 U.S.C. §] 3585(a)," and maintains that the BOP properly promulgated 28 C.F.R. § 523.42(a) to provide that eligibility for FSA time credits occurs only after the prisoner arrives at his designated BOP facility where his sentence will be served. However, Petitioner's argument is not that a prisoner is entitled to earn FSA time credits from the moment he is sentenced. Instead, he posits that a prisoner already assessed, already in accrual status, still in federal custody, and continuing to participate in targeted programming identified by his valid risk and needs assessment should not face automatic disqualification from earning FSA time credits simply because the BOP has placed him in transit status.

This case is highly analogous to *Jackson v. Doerer,* Case No. 5:24-0353-ADS (C.D. Cal., Nov. 7, 2024). In *Jackson,* the BOP disallowed a prisoner 167 days of earned FSA time credits for the time he spent in transit status at FCI-Victorville. The Government argued that even though the prisoner was still in federal custody and participating in targeted anti-recidivism programming, he was not entitled to earn FSA time credits because he was not in his designated facility and was, instead, in transit status. The Central District of California found the BOP's interpretation to be erroneous because, by the BOP's own regulations, the prisoner had successfully participated in EBRR programming during his in-transit status, and denying him application of those credits solely due to his transit status was an incorrect administration of the FSA. *Id.* at *9; *see also* 28 C.F.R. § 523.41(c)(2) (successful participation means that "an eligible inmate participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA.").

9 - OPINION AND ORDER

Respondent asserts that *Jackson* is factually distinguishable from petitioner's case because the prisoner in *Jackson* involved 167 disallowed days, whereas the BOP only disallowed 48 days in Petitioner's case. This is not a meaningful distinction.

Respondent also argues that the Court should not follow the ruling in *Jackson* because it treats § 3632(d)(4)(B) as awarding time credits before a prisoner is sentenced. That is clearly not the case. The prisoner in *Jackson* was sentenced two years before the BOP placed him in transit status. Similarly, Petitioner in the instant case sentenced one year before the BOP placed him in transit status. In this respect, nothing about *Jackson* or this case stands for the proposition that the BOP must award FSA time credits before a prisoner is sentenced.

Respondent next contends that *Jackson*'s interpretation of § 3632(d)(4)(B) treats the use of the word "shall" from § 3632(d)(4)(A) as applicable to the availability of earned time credits when, in fact, that verbiage applies only to the rate at which a prisoner may earn his time credits, not when they begin to do so. However, even disregarding § 3632(d)(4)(A) entirely, § 3632(d)(4)(B) plainly provides only two situations in which a prisoner may not earn time credits for EBRR programs that he successfully completes: (1) if he completed that programming prior to the date of the enactment of the FSA; or (2) if he completed his programming during official detention but prior to the date that his sentence commenced. Neither of these exclusions apply to Petitioner because he completed the EBRR programming at issue well after the enactment of the FSA in 2018, and also well after he was sentenced on September 27, 2024.

Respondent also asks the Court not to rule in line with *Jackson* by briefly citing to four cases in which district courts declined to award FSA credits during transit. However, none of those cases is directly analogous to the facts of *Jackson* or Petitioner's situation because they involve

10 - OPINION AND ORDER

circumstances where prisoners unsuccessfully sought habeas relief in the form of earned FSA time credits when they: (1) did not actually participate in BOP-approved recidivism reduction programming; (2) participated in anti-recidivism programming before the BOP developed an individualized risk and needs assessment system; (3) sought FSA time credits from a time that preceded the BOP's assessment of their risk and needs for purposes of the FSA; or (4) attempted to claim earned FSA time credits stemming from a time when they were not in BOP custody. Contrary to these situations, it is uncontroverted on the record before the Court that while he was in transit status, Petitioner was still participating in qualifying programming, had a proper risk and needs assessment previously performed, remained in BOP custody, and continued to participate in EBRR programming throughout his time in transit that the BOP had specifically targeted as being effective to reduce his risk of recidivism. Respondent does not attempt to specifically identify how these cases fit within the factual parameters of Petitioner's case. On this record, and under the specific circumstances of this case, the BOP did not act within its statutory authority when it placed Petitioner in "disallow" status during the 48 days he was in transit. Habeas relief is therefore warranted.

///

///

///

///

///

///

///

11 - OPINION AND ORDER

**CONCLUSION**

For the reasons identified above, the Petition for Writ of Habeas Corpus (#1) is granted, and Respondent is ordered to credit Petitioner with the 48 days of FSA time credits he earned while in transit status between September 3, 2025 and October 22, 2025.

IT IS SO ORDERED.

April 13, 2026
DATE

Marco A. Hernandez
United States District Judge

12 - OPINION AND ORDER